Filed 12/8/25  P. v. Wilson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THANDIEW SHARIF WILSON,<br><br>    Defendant and Appellant. | D084613<br><br><br><br>(Super. Ct. No. SCD145049) |

APPEAL from an order of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

Thandiew Sharif Wilson appeals the order denying his petition to vacate his murder conviction and to resentence him on his other convictions.

He was found guilty of murder based on his involvement in the commission of felonies during which his brother fatally shot the victim. Wilson contends the evidence was insufficient to prove he was a major participant in the felonies and acted with reckless indifference to human life. We disagree and affirm the challenged order.

I.

BACKGROUND

A.   *Facts*

On July 6, 1999, Wilson, his brother, and another member of the Lincoln Park criminal street gang went to a motel room for a party hosted by Henry Mabry, a member of a rival gang. Several other guests were already there. Wilson and his companions sang rap songs that insulted Mabry's gang. Mabry felt disrespected and became angry. Wilson and his companions reacted similarly when Mabry insulted their gang. Mabry told Wilson and his companions to leave the motel room, and they left.

Wilson and his companions later returned under the false pretense of retrieving an item they left behind. Upon reentering the motel room, Wilson's brother pulled out a gun and told the guests to get on the floor and to surrender their jewelry and other valuables. Wilson himself demanded property from one guest and rummaged through Mabry's duffle bag.

Wilson and his companions realized Mabry was asleep on the bed and began beating him severely as they called out, "Lincoln Park." When one of them snatched chains from his neck, Mabry woke up and fought back. Wilson continued to punch Mabry while Wilson's brother struck Mabry with the gun. Wilson's brother fired a shot into the bed. Mabry continued to fight with Wilson and overpowered him. Wilson's brother shouted, "Get off my brother," and then fatally shot Mabry in the head while he said, "Lincoln

2

Park nigger." Wilson and his companions ran out of the motel room and drove away. The following morning, Wilson learned he was wanted for questioning in the murder and took a bus to Texas.

B.      *Criminal Action*

Wilson was charged with first degree murder (Pen. Code, § 187, subd. (a); undesignated section references are to this code), residential burglary (§§ 459, 460), robbery (§ 211), and six counts of attempted robbery (§§ 21a, 211). Firearm and gang enhancements were alleged as to all counts. (§§ 186.22, subd. (b)(1), 12022.53, subds. (b)–(e), 12022.5, subd. (a)(1), 12022, subd. (a)(1).) As special circumstances, it was alleged the murder occurred during the commission or attempted commission of burglary and robbery. (§ 190.2, subd. (a)(17)(A), (G).)

The case proceeded to a jury trial. Witnesses testified to the events summarized in part I.A., *ante.* A gang expert testified the primary activities of the Lincoln Park gang included robberies, homicides, and assaults with a deadly weapon. (See § 186.22, subds. (e)(1)(A)–(C), (f).) The expert also testified a gang member who was disrespected in front of others would feel a need to respond with violence. The jury found Wilson guilty on all counts and found true all attached allegations.

The superior court sentenced Wilson in September 2002. For the murder, the court imposed a term of life without the possibility of parole plus a term of 25 years to life for the firearm enhancement. (§§ 190.2, subd. (a), 12022.53, subds. (d), (e)(1).) The court imposed and stayed execution of prison terms for the attempted robbery of Mabry and the attached enhancements (§ 654) and imposed concurrent prison terms for all other crimes and enhancements (§ 669, subd. (a)).

3

C.    *Section 1172.6 Proceeding*

On January 1, 2019, legislation took effect that, among other things, narrowed the scope of liability for felony murder by amending section 189. (Stats. 2018, ch. 1015, § 3.)  As amended, section 189 imposes felony murder liability on a person who:  (1) was the actual killer; or (2) with intent to kill, aided and abetted the actual killer; or (3) was a major participant in the felony and acted with reckless indifference to human life.  (*Id.*, subd. (e).)  The legislation added a new statute authorizing a person convicted of felony murder to petition to vacate that conviction and to be resentenced on any remaining convictions if the person could not be convicted of felony murder under the amended statute had it been in effect at the time of the killing.  (Former § 1170.95, enacted by Stats. 2018, ch. 1015, § 4, amended by Stats. 2021, ch. 551, § 2, and renumbered § 1172.6 by Stats. 2022, ch. 58, § 10.)[1] Later that month, Wilson, acting on his own behalf, filed a form petition alleging he could not now be convicted of felony murder under any of the three criteria.

After a summary denial of the petition and reversal on appeal, Wilson was appointed counsel, and the parties stipulated he had stated a prima facie case for relief.  The parties filed competing briefs.  The People argued Wilson remained liable for felony murder despite the amendments to section 189, either because he had an intent to kill when he aided and abetted his brother in killing Mabry or because he was a major participant in the underlying felonies and acted with reckless indifference to human life.  (*Id.*, subd. (e)(2), (3).)  Wilson argued he was entitled to relief under section 1172.6 because the

---

[1]    The amendments are not relevant to this appeal.  We shall cite the current version of the statute (§ 1172.6) in this opinion even though Wilson filed his petition under the former version (§ 1170.95).

4

People could not prove he acted with malice or with reckless indifference to human life as a major participant in the underlying felonies.

The trial court held an evidentiary hearing. The parties stipulated the court could review the reporter's transcripts of Wilson's trial. The People relied on those transcripts and presented no additional evidence. Wilson called only one witness, his brother. On direct examination, the brother admitted he and Wilson were members of the Lincoln Park criminal street gang. Wilson's brother said that on the night of the murder he had a gun in his pocket, started a fight with Mabry, and shot him. He testified Wilson did not know he had a gun and was not in the motel room when he fought with and shot Mabry. On cross-examination, Wilson's brother testified he headed the "Murder Crew" subset of the Lincoln Park criminal street gang in 1999, he "would normally carry a gun" to places he might encounter members of rival gangs, and one "could assume that [he] had a gun." He also testified Wilson knew he headed the Murder Crew. After Wilson's brother was excused, the parties presented their arguments, and the court took the matter under submission.

The trial court issued a written order denying Wilson's section 1172.6 petition. The court reviewed the evidence and made findings of fact. The court then used a pattern jury instruction (CALCRIM No. 540B) to consider the factors identified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) as relevant to determining whether Wilson was guilty of felony murder as a major participant in the felonies who acted with reckless indifference to human life. The court found beyond a reasonable doubt that he was.

## II.

## DISCUSSION

Wilson contends sufficient evidence does not support the trial court's factual findings on some of the *Banks* and *Clark* factors. He asks us to reverse the order denying his section 1172.6 petition and to remand the matter with directions to the trial court to grant it.

### A. *Standard of Review*

When an appellant attacks an order denying relief under section 1172.6 after an evidentiary hearing, we review the trial court's factual findings for substantial evidence. (*People v. Emanuel* (2025) 17 Cal.5th 867, 885 (*Emanuel*).) We review the record in the light most favorable to the order to determine whether it contains evidence that is reasonable, credible, and of solid value from which the court could have found beyond a reasonable doubt that the defendant is guilty of murder under a theory that is legally valid under current law. (*Ibid.*; *People v. Nieber* (2022) 82 Cal.App.5th 458, 476 (*Nieber*).) We presume in support of the order every fact the trial court reasonably could have deduced from the evidence and must accept inferences the court reasonably might have drawn from circumstantial evidence. (*People v. Edwards* (2013) 57 Cal.4th 658, 715; *People v. Montanez* (2023) 91 Cal.App.5th 245, 271 (*Montanez*).) We will not reweigh the evidence and will not reverse the order unless under no hypothesis is there sufficient evidence to sustain the court's factual findings. (*People v. Thomas* (2023) 14 Cal.5th 327, 378; *People v. Cody* (2023) 92 Cal.App.5th 87, 112–113.)

### B. *Wilson's Liability for Felony Murder Under Current Law*

The scope of liability for felony murder was narrowed after Wilson was convicted of that offense, and his conviction under the former, broader felony-murder rule is subject to vacation if he could not be convicted under the

current, narrower rule. (§ 1172.6, subd. (a)(3); *People v. Strong* (2022) 13 Cal.5th 698, 707–709.) As pertinent to this case, current law imposes liability for felony murder on a person who "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) Section 190.2, subdivision (d) subjects to death or imprisonment for life without the possibility of parole a person "who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor." The reference in section 189 to section 190.2 codified the understanding of the major participant and reckless indifference elements set out in *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522. (*Strong*, at p. 710.) Hence, like the parties and the trial court, we review the record under the legal principles established by *Banks* and *Clark* to determine whether it contains substantial evidence that Wilson was a major participant who acted with reckless indifference to human life in the commission of the burglary, robbery, and attempted robberies during which Mabry was killed.

1.    *Major participant*

The major participant element focuses on "the defendant's *personal* role in the crimes leading to the victim's death." (*Banks, supra*, 61 Cal.4th at p. 801.) To qualify as a major participant, the "defendant must have been actively and substantially involved in the events leading up to [the] murder." (*Ibid.*) His "personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Id.* at p. 802.) To determine whether a defendant was a major participant in a

7

felony that resulted in a death, the *Banks* court identified five factors for the trier of fact to consider. (*Id.* at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citation]." (*Ibid.*) As we discuss below, four of the *Banks* factors support the trial court's finding that Wilson was a major participant in the felonies during which Mabry was shot dead, and one factor is neutral.

The first *Banks* factor asks, "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?" (*Banks, supra*, 61 Cal.4th at p. 803.) The record contains no direct evidence on who planned the crimes that led to Mabry's death, but circumstantial evidence indicated Wilson was involved in the planning. Wilson was at the motel room when he and his companions exchanged gang insults with Mabry, and he returned with them later when they reentered Mabry's motel room under a false pretense and his brother took out a gun and demanded guests surrender their valuables. Wilson himself demanded property from one guest and searched through Mabry's duffle bag. From those circumstances, the trial court reasonably could infer, as it did, that Wilson knew his brother was "very upset" at having been "disrespected" by Mabry and agreed with his brother to settle the score with Mabry by returning to the motel room "to use force and violence to steal." This factor supports the court's finding Wilson was a major participant.

The second *Banks* factor asks, "What role did the defendant have in supplying or using lethal weapons?" (*Banks, supra*, 61 Cal.4th at p. 803.) There was no evidence Wilson himself used a weapon in the burglary,

robbery, or attempted robberies or that he supplied the gun his brother used during those crimes and the related murder. The trial court's statement that Wilson "knew the circumstances they were getting into and reasonably would know his brother would have to have protection so they could accomplish the goal," though perhaps true, is irrelevant to whether Wilson supplied or used weapons. This factor is therefore neutral as to whether Wilson was a major participant in the crimes that led to Mabry's death.

The third *Banks* factor asks, "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?" (*Banks, supra*, 61 Cal.4th at p. 803.) The trial court found Wilson "knew his brother was armed"; "entered the [m]otel room with the intent to commit robbery"; and, as a member of the same gang as his companions, "would reasonably understand the dangers involved," "particularly . . . because they were outnumbered." The record supports those findings. There was evidence at trial that Wilson and his companions belonged to the same gang; Mabry and his guests outnumbered them; and, after being disrespected by rival gang member Mabry, they left the motel room and returned to rob him. No direct evidence established Wilson knew his brother had a gun before they returned to the motel room. But circumstantial evidence, which is as sufficient as direct evidence to support a finding (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055), established that knowledge. There was more than the fraternal relationship, which Wilson correctly notes was insufficient to prove he knew his brother was armed. At the evidentiary hearing, Wilson's brother testified Wilson knew the brother headed the Murder Crew subset of their gang and "[one] could assume that [he] had a gun" whenever he went somewhere he might encounter a rival gang member. Since Wilson's brother returned to the motel

9

room to rob rival gang member Mabry for disrespecting him, one could assume he had a gun. In any event, Wilson knew his brother was armed no later than shortly after they reentered the motel room, when the brother displayed the gun and demanded the guests hand over their valuables. The brother later used the gun to strike Mabry and to fire a shot into the bed. "As the crimes unfolded, [Wilson] could observe additional warning signs of danger to the victims." (*Montanez, supra*, 91 Cal.App.5th at p. 274.) This factor therefore supports the finding he was a major participant in the crimes that led to Mabry's death. (*Ibid.*; *In re Harper* (2022) 76 Cal.App.5th 450, 462 (*Harper*) [defendant's knowledge accomplice had gun and violent tendency supported third *Banks* factor]; *In re McDowell* (2020) 55 Cal.App.5th 999, 1013 (*McDowell*) [defendant's knowledge he and accomplice were outnumbered supported inference he knew situation could quickly turn deadly].)

The fourth *Banks* factor asks, "Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?" (*Banks, supra*, 61 Cal.4th at p. 803.) The record contains testimony from several eyewitnesses that Wilson was in the motel room from the time the robbery and attempted robberies began through the time the murder occurred. Witnesses testified Wilson participated in the physical attack on Mabry during which his necklaces were stolen and continued to beat him until Wilson's brother shot him dead. There is no evidence Wilson did anything to restrain his brother or to help Mabry. To the contrary, it appears Wilson's actions provoked his brother to shoot Mabry when he gained the advantage in the fight with Wilson. Wilson thus correctly points out the record does not support the trial court's finding that Wilson "prevented

10

Mabrey [*sic*] from being able to defend himself." But the record does support the court's findings that Wilson facilitated the violence that led to Mabry's death and "[t]here was no indication he was surprised by the escalation in violence." Wilson contends he could not have prevented the shooting because he was unable to calm his brother down during their absence from the motel room. He cites nothing in the record to support the contention, however, and we found no indication he could have done nothing to defuse the situation. Rather, the record shows the brothers collaborated in the violent crimes during which Mabry was killed. Because Wilson's own "actions played a role in the murder," this factor supports the trial court's finding he was a major participant. (*Harper, supra*, 76 Cal.App.5th at p. 462; see *In re Loza* (2017) 10 Cal.App.5th 38, 50 (*Loza*) [finding "particularly significant" in major participant analysis defendant's presence at scene, involvement in robbery, and failure to attempt to prevent shootings or to assist victims].)

The fifth and final *Banks* factor asks, "What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at p. 803.) Testimony of eyewitnesses that Wilson and his companions ran out of the motel room and drove off together after his brother shot Mabry and Wilson's own testimony he went to Texas the next day support the trial court's finding he fled the state after the shooting. The same testimony also indicates Wilson willingly participated in the crimes and was conscious of guilt. (See *People v. Hill* (1967) 67 Cal.2d 105, 120 [flight may indicate consciousness of guilt]; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095 [flight with accomplices may support aiding and abetting liability].) This factor supports the court's major participant finding. (See *Harper, supra*, 76 Cal.App.5th at pp. 462–463 [defendant's continuing with robbery and fleeing state after accomplice killed victim supported major participant finding].)

11

2.     *Reckless indifference to human life*

We next consider whether the record contains substantial evidence that Wilson "acted with reckless indifference to human life" in the crimes that ended in Mabry's death.  (§ 189, subd. (e)(3).)  This element focuses on whether the defendant " 'knowingly engag[ed] in criminal activities known to carry a grave risk of death.' "  (*Clark, supra*, 63 Cal.4th at p. 616.)  Acting with reckless indifference to human life requires conscious disregard of the substantial and unjustifiable risk the actions create.  (*Id.* at p. 617; *Banks, supra*, 61 Cal.4th at p. 801.)  To determine whether a defendant acted with such reckless indifference in a felony that resulted in a death, the *Clark* court identified five factors for the trier of fact to consider.  (*Id.* at pp. 618–621.)  The *Clark* factors " 'significantly overlap' " the *Banks* factors, and as with the *Banks* factors, " 'no one of [the *Clark*] considerations is necessary, nor is any one of them necessarily sufficient.' "  (*Clark*, at pp. 615, 618.)  We analyze each of the *Clark* factors below and conclude that, when considered as a whole, they support the trial court's finding on reckless indifference.

The first *Clark* factor is the defendant's own use of weapons, knowledge of others' use of weapons, and the number of weapons used.  (*Clark, supra*, 63 Cal.4th at p. 618.)  It is undisputed that only one weapon was used in the crimes that resulted in Mabry's death and that Wilson's brother used it.  The brother used a gun to demand Mabry's guests turn over their jewelry and other valuables, to beat Mabry, to fire a shot into the bed, and finally to shoot Mabry dead.  Wilson insists there was no proof he knew his brother had a gun before they went to Mabry's motel room either time.  As we noted when discussing the third *Banks* factor, however, circumstantial evidence supports the trial court's finding Wilson knew his brother was armed before they returned to the motel room.  Even if he did not have such advance knowledge,

12

he knew his brother had a gun before the fatal shooting because shortly after they reentered Mabry's motel room the brother displayed the gun to start the robbery that resulted in Mabry's death.  (See *Montanez, supra*, 91 Cal.App.5th at p. 281 [defendant's presence at scene and proximity to accomplices with guns supported inference defendant was aware of guns]; *McDowell, supra*, 55 Cal.App.5th at p. 1013 [knowledge of gun may be acquired during commission of felony that leads to death].)  Wilson's awareness a gun would be used in the felonies, though insufficient by itself to establish reckless indifference to human life (*Clark*, at p. 618), supports a finding of reckless indifference (*Montanez*, at p. 281; *Nieber, supra*, 82 Cal.App.5th at p. 479).

The second *Clark* factor is the defendant's physical presence at the crime scene and opportunities to restrain the accomplices or to aid the victims.  (*Clark, supra*, 63 Cal.4th at p. 619.)  This factor is substantially similar to the fourth *Banks* factor we discussed above.  As we noted there, the trial evidence showed Wilson was in the motel room when all the crimes occurred, actively participated in the robberies and attempted robberies, was struggling with Mabry when he was fatally shot, and did nothing to prevent the shooting or to aid Mabry after he was shot.  The trial record thus supports the trial court's findings that Wilson was "near [Mabry] when the killing occurred" and that he had "an opportunity to stop the killing or to help [Mabry]."  Wilson does not dispute the former finding, but he does dispute the latter.  He contends it was "unlikely" he could have controlled the actions of his brother, who was the only one armed; and it would have been "difficult" to aid Mabry, who was larger and was fighting back when he was shot.  Wilson cites no evidence to support these contentions, and we reject them.  As we explained in connection with the fourth *Banks* factor, Wilson's brother used

13

lethal force when Mabry got the advantage in the fight with Wilson. Had Wilson stopped fighting, he might have defused the situation. We conclude the evidence on this factor "strongly support[s] a finding [Wilson] acted with reckless indifference to human life." (*Nieber, supra*, 82 Cal.App.5th at p. 479 [defendant was present at and participated in robbery, did not intervene to prevent murder, and rendered no aid to victims]; see *People v. Williams* (2020) 57 Cal.App.5th 652, 664 [defendant's flight with accomplices from scene of attempted robbery after accomplice shot victim and without attempt to aid victim supported reckless indifference finding].)

The third *Clark* factor is the duration of the felony that resulted in the death. (*Clark, supra*, 63 Cal.4th at p. 620.) As the trial court noted, the exact duration of the robbery and attempted robberies is not clear from the record, but they lasted less than 15 minutes. Wilson claims that period was too short to provide an opportunity to prevent the murder or to aid Mabry. We disagree. The robbery during which Mabry was shot dead was not "a purely spontaneous crime of opportunity" in which "events occurred rapidly within a short timeframe" (*People v. Giuffreda* (2023) 87 Cal.App.5th 112, 128) or an "unexpected and unplanned" encounter in which "events unfurled in rapid succession once the encounter began" (*People v. Keel* (2022) 84 Cal.App.5th 546, 560), such as would weigh against a reckless indifference finding. After Wilson and his companions left the motel room the first time, they planned to return to rob Mabry for having disrespected them. The period they were in Mabry's motel room the second time, though brief, was long enough for Wilson "to do something to deescalate the situation" (*McDowell, supra*, 55 Cal.App.5th at p.1014), such as stop fighting with Mabry, "yell at [his brother] to stop" after he fired the first shot, "demand

14

that they leave, distract [his brother], or attempt to calm [him]" (*Loza, supra*, 10 Cal.App.5th at p. 54).

In any event, whether Wilson had an opportunity to stop the killing or to aid Mabry is not the focus of the third *Clark* factor. That factor instead looks at "whether a murder came at the end of a prolonged period of restraint of the victims by defendant" during which " 'there [was] a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Clark, supra*, 63 Cal.4th at p. 620.) "A lengthy interaction between perpetrators and victims of a felony may increase the risk of resistance, conflict, and violence." (*Emanuel, supra*, 17 Cal.5th at p. 886.) The interaction in this case was not lengthy and did not include a prolonged period of victim restraint. We agree with Wilson that the amount of time it took to complete the robbery "did nothing to heighten the risk of violence beyond that inherent in the robbery itself." (*Ibid.*) "The *Clark* factor concerning duration of the crime therefore is neutral in this case." (*Ibid.*)

The fourth *Clark* factor is the defendant's knowledge of the likelihood accomplices would kill. (*Clark, supra*, 63 Cal.4th at p. 621.) The trial court found Wilson "knew how upset his brother was and the significance of being disrespected in their gang culture," "participated in the culture himself," and "knew revenge was the goal." Those findings are supported by eyewitnesses' trial testimony about the exchange of gang insults between Wilson's group and Mabry and their respective angry reactions and by the gang expert's trial testimony that homicide was one of the primary activities of the gang to which Wilson and his brother belonged and that a gang member would tend to respond with violence when disrespected in front of others. In addition, when Wilson and his brother returned to the motel room to rob Mabry, Wilson saw his brother take out a gun, demand guests surrender their

15

jewelry and other valuables, hit Mabry with the gun, and fire a round into the bed. Knowledge of an accomplice's likelihood of using lethal force may arise during commission of the felony (*In re Scoggins* (2020) 9 Cal.5th 667, 681 (*Scoggins*)), and Wilson's brother's "actions 'just before the shooting [of Mabry] would have indicated that [he] was likely to engage in lethal violence' " (*McDowell, supra*, 55 Cal.App.5th at p. 1014). We conclude Wilson's knowledge of his brother's potential use of lethal violence supports the finding that Wilson acted with reckless indifference to human life. (*Ibid.*; *In re Parrish* (2020) 58 Cal.App.5th 539, 544 [defendant knew one accomplice was fellow gang member and wanted to bring gun to robbery].)

The fifth and final *Clark* factor focuses on the defendant's efforts to minimize the risk of violence in the commission of the felony. (*Clark, supra*, 63 Cal.4th at p. 621.) The trial court found Wilson made no such efforts and "instead jumped on Mabrey [*sic*] after his brother had hit him in the head with the gun and[,] along with [their other companion], beat Mabrey [*sic*] severely. His brother shot Mabrey [*sic*] when Mabrey [*sic*][,] who was a larger, stronger man[,] started to fight back." Wilson objects that in making those findings the trial court "appears to have conflated the risk of violence during the robbery itself, '[r]ather than analyze the facts identified by the trial court as relevant to the minimization of risk during the planning stage.' " (Quoting *Emanuel, supra*, 17 Cal.5th at p. 887.) We think the objection is well taken. "Efforts at the planning stage to minimize the potential for violence . . . are viewed as a distinct factor from efforts to restrain confederates once the felony is underway." (*Id.* at pp. 887–888.) Wilson is thus correct that the trial court failed to address this factor properly under *Emanuel* because it did not "consider the presence or absence

16

of evidence relating to each relevant factor on its own merits before considering the evidence in its totality." (*Id.* at p. 888.)

The trial court's conflation of the second and fourth *Clark* factors, however, does not require the reversal and remand for reconsideration under *Emanuel* that Wilson requests. He has identified no evidence that in planning the robbery in which Mabry was killed he took steps to reduce the potential for violent conflict, and we have found none. For example, there was no evidence Wilson planned or agreed to participate in an unarmed robbery in a public place during the daytime (*Emanuel, supra*, 17 Cal.5th at p. 887; *Scoggins, supra*, 9 Cal.5th at p. 683) or a robbery that called for the use of an unloaded gun (*Clark, supra*, 63 Cal.4th at pp. 621–622). Rather, as the trial court noted in its factual findings, Wilson agreed to participate in a violent robbery knowing that his brother (a fellow gang member) was armed and wanted revenge for the disrespect they had been shown by Mabry (a rival gang member) and that Mabry and the guests in his motel room significantly outnumbered Wilson's group. Those findings show "the objective risk of violence posed by the crime and reasonably anticipated by [Wilson] [was] graver than the risk of violence inherent in any violent felony." (*Emanuel*, at p. 889.) With those findings and no evidence of any efforts by Wilson to reduce the obvious risk of lethal violence in the planned robbery of Mabry, the trial court could not have found the fifth *Clark* factor weighed against a finding he acted with reckless indifference to human life. (See *Montanez, supra*, 91 Cal.App.5th at p. 284 [fifth *Clark* factor "mitigates culpability"]; *McDowell, supra*, 55 Cal.App.5th at pp. 1013–1014 [when robbery plan posed obvious risks of lethal violence, failure to try to minimize risk supported reckless indifference finding].)

17

3.    *Conclusion*

The record shows the trial court conducted the required " 'fact-intensive, individualized inquiry' into where [Wilson's] conduct falls on the spectrum of culpability" for nonkiller felony murderers.  (*Emanuel, supra*, 17 Cal.5th at p. 883.)  The court considered the evidence introduced at Wilson's trial and at the evidentiary hearing on his section 1172.6 petition in light of the factors identified in *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522, and, based on the totality of the circumstances, found he was guilty of murder as a "major participant" who "acted with reckless indifference to human life" in the felonies during which Mabry was killed (§ 189, subd. (e)(3)).  For the reasons discussed above, we are satisfied the record contains substantial evidence to support those findings.  Because the legislative changes that narrowed the scope of felony-murder liability and took effect after Wilson was convicted do not relieve him of liability for Mabry's murder, the trial court did not err in denying his petition to vacate the murder conviction.  (§ 1172.6, subd. (a)(3); *People v. Hill* (2024) 100 Cal.App.5th 1055, 1076; *Nieber, supra*, 82 Cal.App.5th at p. 479; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1091.)

## III.
## DISPOSITION

The order denying the petition for relief under section 1172.6 is affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.